**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| RUSSELL OEHRING<br><br>                Plaintiff,<br><br>        v.<br><br>SPIKE BREWING, LLC<br><br>                Defendant. | Case No.   6:19-cv-00444<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff, Russell Oehring, by and through the undersigned attorneys, (hereinafter "Plaintiff") and files this Complaint against Defendant Spike Brewing, LLC (hereinafter "Defendant") and would respectfully show the Court as follows:

### I.    PARTIES

1.     Plaintiff Russell Oehring is an individual and citizen of the State of Texas who resides in McLennan County, Texas. Plaintiff purchased a home brewing device from Defendant and sustained severe bodily injury as a result of that product's unreasonably dangerous design and malfunction.

2.     Defendant Spike Brewing, LLC is a Wisconsin limited liability company with its principal place of business in the State of Wisconsin located at 3866 North Fratney Street, Milwaukee, Wisconsin 53212-1341. Pursuant to Fed. R. Civ. P. 4(h), Spike Brewing, LLC may be served with process by delivering a copy of the summons and of this Complaint to Spike Brewing, LLC's registered agent for service of process, Ben Caya, located at 3866 North Fratney Street, Milwaukee, Wisconsin 53212-1341, or wherever he may be found.

## II.   JURISDICITON AND VENUE

3.      This Court has personal jurisdiction over Defendant pursuant to the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, as this lawsuit arises out of a tort committed by Defendant in whole or in part in Texas. Defendant purposefully availed itself of the privileges and benefits of conducting business in Texas by directing its product sales to this State, maintaining such minimum contacts with this State that the assumption of jurisdiction by this Court does not offend traditional notions of fair play and substantial justice.

4.      The Court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(l) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

5.      Venue is proper in this district under 28 U.S.C. §1391(b)(2) because all or a substantial part of the events or omissions giving rise to these claims occurred in this district, and a substantial part of property that is the subject of the action is situated in this district.

## III.   FACTUAL BACKGROUND

6.      On or about December 2017, Plaintiff purchased from Defendant a CF15 Spike Conical Unitank Fermenter[1] (hereinafter, "the Fermenter"). Defendant is the designer, manufacturer, producer, distributor, vendor, and seller of and/or marketing entity for the Fermenter.

7.      The Fermenter is a stainless-steel tank used in the process of brewing beer at home. According to Defendant's website, is a scaled down version of a conical fermenting tank used at professional breweries and it is designed to allow the homebrewer to carbonate

---

[1] See the following link to Defendant's website for more specific product information:
https://spikebrewing.com/collections/fermenters/products/cf15

beer while still in the Fermenter to quicken the brewing process.[2] The product is designed to hold pressure up to the 15psi of pressure needed to carbonate the beer before transferring to a keg.[3]

8.      On top of the Fermenter sits a lid and clamp, which are described in a video on Defendant's website as "high pressure,"[4] indicating that the clamp can secure the lid up to at least the 15psi of internal pressure needed to carbonate the beer. The lid is detachable to allow access to the inside of the tank for cleaning. The clamp consists of a metal band that wraps around the lid and is tightened by twisting a T-bolt into a latch on the clamp.[5] The Fermenter also contains a pressure gauge that is designed to measure and display the psi level inside the tank and a pressure relief valve designed to automatically release excess pressure and manually release pressure to adjust the internal psi level as needed.

9.      On May 15, 2018, Plaintiff, with the assistance of his friend, Kevin Yackley, who has thirty years of experience brewing, used the Fermenter and followed all instructions enclosed with the Fermenter. Plaintiff and Mr. Yackley finished the last step of transferring the beer from the Fermenter to the kegs and then prepared to clean the inside of the tank. Plaintiff engaged the pressure relief valve to manually release the pressure inside the Fermenter until he could no longer hear the hissing of air escaping from the valve. He then checked the pressure gauge to confirm he had released all the pressure from inside the tank. The gauge read 2psi or less, which is the lowest possible reading displayed on the gauge. Believing the tank to be depressurized, Plaintiff attempted to loosen the clamp on the lid by

---

[2] See https://spikebrewing.com/pages/fermenters & https://spikebrewing.com/products/carb-stone.
[3] See https://spikebrewing.com/products/carb-stone.
[4] See https://spikebrewing.com/collections/fermenters.
[5] See Degroote, John, "Lid gasket installation instructions", Spike Brewing (January 17, 2018) <https://spikebrewing.freshdesk.com/support/solutions/articles/35000045928-lid-gasket-installation-instructions>.

twisting the T-bolt. Plaintiff had moved the T-bolt, at most, only one-half turn, when, suddenly and without warning, the lid blew off the Fermenter and struck Plaintiff in the face, crushing his right orbital bone and right eye and lacerating his forehead.

10.    Plaintiff was rushed to the hospital following the incident, where he underwent treatment of his severe injuries. Doctors attempted to save Plaintiff's eye, but the damage was too extensive, and the eye had to be removed. To date, Plaintiff continues to endure pain and discomfort from his injuries.

11.    Plaintiff did not modify the Fermenter in any way before using it. The surface on which the Fermenter was being used was level, nothing was obstructing or surrounding the Fermenter, and nothing was atop the lid of the Fermenter.

12.    None of the instructions provided by Defendant, whether enclosed with the Fermenter or published online, include any warnings relating to the lid possibly blowing off the tank or any cautionary directions to prevent such an incident from occurring. Neither are there any warnings or directions to that effect printed or otherwise displayed on the Fermenter.

13.    The Fermenter also lacks any redundant safety system designed to prevent the lid from blowing off the tank should the clamp fail to do so, as it did in this case. For instance, Plaintiff has used other fermenters with several clasps affixed to the tank that lock over the lid, such that even if one clasp fails, others remain to hold the lid in position or at least keep it from blowing off at high speed.

14.    Defendant's failure to take reasonable care in developing, designing, manufacturing, testing, selling, and/or marketing a product free from defects and safe for consumer use, and Defendant's failure to adequately warn consumers of foreseeable dangers related to its product, proximately caused Plaintiff's injuries and damages.

## IV.    CAUSE OF ACTION – NEGLIGENCE

15.    Defendant was negligent in developing, designing, manufacturing, testing, selling, and/or marketing the Fermenter.

16.    At all times material hereto, the Fermenter was being used by Plaintiff for the foreseeable intended purposes for which it was developed, designed, manufactured, tested, sold, and/or marketed. Plaintiff was the foreseeable intended user of the Fermenter.

17.    Defendant owed a duty to Plaintiff to use reasonable care in developing, designing, manufacturing, testing, selling, and/or marketing a product free from defects in material or workmanship that was safe and functional for consumer use and did not pose a foreseeable risk of harm to consumers. Defendant failed to exercise such reasonable care.

18.    Defendant owed a duty to Plaintiff to adequately warn of the dangers inherent in the use of the product it developed, designed, manufactured, tested, sold, and/or marketed. Defendant failed to adequately warn consumers of the dangers inherent in its product that is the subject of this suit.

19.    Plaintiff's injuries and damages are the direct and proximate result of the Defendant's negligence, as well as that of its agents, servants, employees, and apparent agents acting within and during the scope of their employment, authority, or apparent authority. Plaintiff's injuries and damages are not due to any act or failure on the part of Plaintiff.

20.    Defendant was negligent in one or more of the following respects:

   a.  Failing to take appropriate steps to ensure the Fermenter lid could not blow off the tank;

   b.  Failing to conduct an appropriate inspection of the Fermenter;

   c.  Marketing, selling, and shipping the Fermenter in an unsafe condition;

d.  Failing to provide users of the Fermenter with adequate instructions for its safe use;

e.  Failing to provide users of the Fermenter with adequate warnings concerning its use;

f.  Failing to thoroughly and adequately test the Fermenter to ensure that the lid could not be discharged from the Fermenter in the course of use;

g.  Designing and/or selling the Fermenter with the capacity to retain pressure despite prolonged opening of the pressure relief valve;

h.  Failing to equip the Fermenter with properly functioning safety features which would prevent the lid from opening while contents were under pressure;

i.  Failing to prevent damage to, or sticking or malfunction of, the Fermenter's safety features;

j.  Failing to provide a safe, appropriate, and effective mechanism for securing the lid of the Fermenter;

k.  Designing the Fermenter in such a way that it is not apparent to the user that the internal pressure of the Fermenter is such that the lid could blow off at high speed;

l.  Failing to design the Fermenter with a warning mechanism that would allow a user to recognize that the Fermenter was still under pressure;

m. Failing to discover defects in, and the dangerous condition of, the Fermenter;

n.  Failing to remedy the defects in, and the dangerous condition of, the Fermenter;

o.  Failing to discover defects in, and dangerous inadequacies of, the instructions and warnings provided with the Fermenter;

p.  Failing to properly test, evaluate, inspect, and assemble the Fermenter;

q.  Failing to properly design, manufacture, and advertise the Fermenter to ensure that it was not unreasonably dangerous;

r.  Failing to warn the public in general, and Plaintiff in particular, of the dangers presented by the use of the Fermenter;

s.  Failing to exercise due care and act with regard for the safety of those using its products; and

t.  Such other and further acts and/or omissions as may be shown by the evidence at the trial of this cause.

21.  Each of the above-listed acts and/or omissions, taken singularly or in combination, was a proximate cause of Plaintiff's injuries and damages. The above and foregoing acts and omissions of Defendant constitute negligence, which was the proximate cause of Plaintiff's resulting injuries and damages. Nothing Plaintiff did or failed to do caused or contributed to cause the occurrence made the basis of this suit.

22.  As a direct and proximate result of Defendant's conduct, Plaintiff suffered the following injuries and damages:

a.  Medical expenses in the past and future;

b.  Physical pain and mental anguish in the past and future;

c.  Disfigurement in the past and future;

    d.  Physical impairment in the past and future; and

    e.  Past lost wages.

## V.   <u>CAUSE OF ACTION – STRICT LIABILITY</u>

23.    Plaintiff incorporates the facts and allegations in the preceding paragraphs as if fully set forth herein.

24.    Defendant is the manufacturer, designer, distributor, and/or seller of the Fermenter. Defendant sold and delivered the Fermenter to Plaintiff.

25.    At all times prior to delivery, the Fermenter was in the exclusive control of Defendant, its agents, servants, employees, and/or apparent agents, and was delivered to Plaintiff without substantial change in its condition.

26.    The Fermenter was used by Plaintiff as designed and intended by the Defendant, without any change in its condition from the time it left the control of the Defendant until it was used by Plaintiff.

27.    The Fermenter, which was sold and delivered to Plaintiff by Defendant and used by Plaintiff, was, at the time of sale and delivery, in a defective condition and unreasonably dangerous to the user.

28.    The Fermenter was defective and unreasonably dangerous in that it failed to conform to the product design and specifications of other homebrewing conical fermenters currently sold in the market with alternative safety features that would have prevented the sudden and unexpected ejection of the lid when used in accordance with the instructions provided. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

29.    The Fermenter was defective and unreasonably dangerous, because there was a lack of adequate warnings and notices that the product could inadvertently eject its lid in a

way not warned of or contemplated by the ordinary user of the product. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

30.    The Fermenter was defective and unreasonably dangerous due to the hazard created by the ability of the lid to come off while its contents were under pressure and by the inability of an ordinary user to recognize that the contents were under pressure. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

31.    As a direct result of the defective condition of the Fermenter, Plaintiff sustained the injuries and losses described herein. Had the Fermenter not been manufactured, designed, distributed, or sold by Defendant in such an unreasonably dangerous condition, Plaintiff's injuries would not have occurred.

32.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered the following injuries and damages:

        a.  Medical expenses in the past and future;

        b.  Physical pain and mental anguish in the past and future;

        c.  Disfigurement in the past and future;

        d.  Physical impairment in the past and future; and

        e.  Past lost wages.

## VI.    CONDITIONS PRECEDENT

33.    All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## VII.    JURY DEMAND

34.    Plaintiff demands a jury trial and tenders the appropriate fee with this complaint.

## VIII.    <u>**PRAYER**</u>

35.    For the reasons above, Plaintiff Russel Oehring asks the Court to issue summons for Defendant to appear and answer, and that Plaintiff be awarded a judgment against Defendant for the following:

a.   Actual damages,

b.   Court costs,

c.   Pre-judgment and post-judgment interest at the highest rates allowed by law, and

d.   All other relief, legal or equitable, to which Plaintiff is entitled.

Respectfully submitted,

**HALEY ♦ OLSON**
A PROFESSIONAL CORPORATION
100 N. Ritchie Road, Suite 200
Waco, Texas 76712
Telephone: (254) 776-3336
Facsimile: (254) 776-6823

BY:    /s/ Craig D. Cherry_____
       **CRAIG D. CHERRY**
       Bar No. 24012419
       Email: ccherry@haleyoson.com
       **JUSTIN ALLEN**
       Bar No. 24081977
       Email: jallen@haleyolson.com

       And

       **JOHN B. LEJEUNE**
       Bar. No. 24034538
       THE ZIMMERMAN LAW FIRM
       A Professional Corporation
       3501 W. Waco Drive
       Waco, Texas 76710
       (254) 265-9300
       (254) 752-9680 (fax)
       Email:  jlejeune@zlawhelp.com


**ATTORNEYS FOR PLAINTIFF**