**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **RUSSELL OEHRING,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 6:19-CV-00444-JCM** |
| | § | |
| **SPIKE BREWING, LLC; WINTERS** | § | |
| **INSTRUMENTS, INC.; CHANGSHU** | § | **JURY TRIAL DEMANDED** |
| **HUAKE (ZHONGYA) IMPORT AND** | § | |
| **EXPORT TRADE CO., LTD.;** | § | |
| **PENNLAKE CORPORATION d/b/a** | § | |
| **CONRADER VALVES; CONRADER** | § | |
| **HOLDINGS, LLC; and CLAMPCO** | § | |
| **PRODUCTS, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## SECOND AMENDED COMPLAINT

COMES NOW Plaintiff, Russell Oehring, by and through the undersigned attorneys, (hereinafter "Plaintiff") and files this Complaint against Defendants Spike Brewing, LLC; Winters Instruments, Inc.; Pennlake Corporation d/b/a Conrader Valves; Conrader Holdings, LLC; and Clampco Products, Inc.; (collectively "Defendants") and would respectfully show the Court as follows:

## PARTIES

1.      Plaintiff Russell Oehring is an individual and citizen of the State of Texas who resides in McLennan County, Texas. Plaintiff purchased a home brewing device from Defendant Spike Brewing, LLC and sustained severe bodily injury as a result of that product's and/or its component parts' unreasonably dangerous design and malfunction.

2.     Defendant Spike Brewing, LLC (hereinafter "Spike Brewing") is a Wisconsin limited liability company with its principal place of business in the State of Wisconsin located at 3866 North Fratney Street, Milwaukee, Wisconsin 53212-1341. Defendant Spike Brewing, LLC has entered an appearance in this case and may be served with a copy of this amended pleading through its counsel of record in accordance with Fed. R. Civ. P. 5. Defendant Spike Brewing is the designer, manufacturer, producer, distributor, vendor, and seller of and/or marketing entity of the CF15 Spike Conical Unitank Fermenter (hereinafter "the Fermenter").

3.     Defendant Winters Instruments, Inc. (hereinafter "Winters Instruments") is a Delaware corporation with its principal place of business in the State of New York located at 600 Ensminger Road, Buffalo, New York 14150. Defendant Winters Instruments, Inc. has entered an appearance in this case and may be served with a copy of this amended pleading through its counsel of record in accordance with Fed. R. Civ. P. 5. Upon information and belief, Defendant Winters Instruments is the co-designer, manufacturer, producer, and/or supplier of the pressure gauge component (hereinafter "the Pressure Gauge") of the Fermenter that Defendant Spike Brewing sold and delivered to Plaintiff.

4.     Defendant Changshu Huake (Zhongya) Import and Export Trade Co., Ltd. (hereinafter "Changshu") is a foreign company based in the People's Republic of China. Defendant Changshu Huake (Zhongya) Import and Export Trade Co., Ltd. engages in business in the State of Texas but does not maintain a regular place of business in this State and does not maintain a designated agent for service of process in this State. Therefore, Defendant Changshu Huake (Zhongya) Import and Export Trade Co., Ltd. may be served with process by serving the Secretary of State as the substituted agent for service of process under Tex. Civ. Prac. & Rem. Code §§ 17.044(a) and (b) at either of the following addresses:

*Via Certified or Regular Mail*
Service of Process
Secretary of State
P.O. Box 12079
Austin, Texas 78711-2079

*Via Delivery or Overnight Mail*
Service of Process
Secretary of State
James E. Rudder Building
1019 Brazos, Room 105
Austin, Texas 78701

The Secretary of State should be instructed to forward this Petition and citation to Defendant

Changshu Huake (Zhongya) Import and Export Trade Co., Ltd., at its home office address,

which is its principal place of business:

Changshu Huake (Zhongya) Import and Export Trade Co., Ltd.
No.18 Yingbin Road, Bixi District
Changshu City, Jiangsu, China

Alternatively, Defendant Changshu Huake (Zhongya) Import and Export Trade Co., Ltd. may

be served with process under the Hague Convention on the Service Abroad of Judicial and

Extra-Judicial Documents ("Hague Convention") at the following address:

Changshu Huake (Zhongya) Import and Export Trade Co., Ltd.
No.18 Yingbin Road, Bixi District
Changshu City, Jiangsu, China

Upon information and belief, Defendant Changshu Huake (Zhongya) Import and Export

Trade Co., Ltd. is the co-designer, manufacturer, producer, and/or supplier of the Pressure

Gauge of the Fermenter that Defendant Spike Brewing sold and delivered to Plaintiff.

5.      Defendant Clampco Products, Inc. (hereinafter "Clampco Products") is an Ohio

corporation with its principal place of business in the State of Ohio. Defendant Clampco Products,

Inc. has entered an appearance in this case and may be served with a copy of this amended pleading

through its counsel of record in accordance with Fed. R. Civ. P. 5. Upon information and belief, Defendant Clampco Products is the co-designer, manufacturer, and/or producer of the lid clamp component (hereinafter "the Lid Clamp") of the Fermenter that Defendant Spike Brewing sold and delivered to Plaintiff.

6.     Defendant Pennlake Corporation d/b/a Conrader Valves (hereinafter "Pennlake") is a Pennsylvania corporation with its principal place of business in the State of Pennsylvania located at 1702 Wagner Avenue, Erie, Pennsylvania 16510. Defendant Pennlake Corporation d/b/a Conrader Valves may be served with process by delivering a copy of the summons and of this Second Amended Complaint to Pennlake Corporation's President, John D. Mosher, located at 1702 Wagner Avenue, Erie, Pennsylvania 16510, or wherever else he may be found; or to any other executive officer; officer; partner or trustee; manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation; managing or general agent; or any other agent authorized by appointment or by law to receive service of process; and by also mailing a copy of the summons and of this Second Amended Complaint to Defendant Pennlake Corporation d/b/a Conrader Valves. *See* Fed. R. Civ. P. 4; Pa.R.C.P. No. 424. Upon information and belief, Defendant Pennlake Corporation d/b/a Conrader Valves is a co-designer, manufacturer, and/or producer of the 15psi pressure relief valve component (hereinafter "the Pressure Relief Valve") of the Fermenter that Defendant Spike Brewing sold and delivered to Plaintiff.

7.     Defendant Conrader Holdings, LLC (hereinafter "Conrader Holdings") is a Pennsylvania limited liability company with its principal place of business in the State of Pennsylvania located at 749 East 18th Street, Erie, Pennsylvania 16503. Defendant Conrader Holdings, LLC may be served with process by delivering a copy of the summons and of this

Second Amended Complaint to Conrader Holdings, LLC's organizer, James E. Spoden, located at 100 State Street, Suite 700, Erie, Pennsylvania 16507, or wherever else he may be found; or to any other executive officer; officer; partner or trustee; manager, clerk or other person for the time being in charge of any regular place of business or activity of Defendant Conrader Holdings, LLC; managing or general agent; or any other agent authorized by appointment or by law to receive service of process; and by also mailing a copy of the summons and of this Second Amended Complaint to Defendant Conrader Holdings, LLC. *See* Fed. R. Civ. P. 4; Pa.R.C.P. No. 424. Upon information and belief, Defendant Conrader Holdings, LLC is a co-designer, manufacturer, and/or producer of the Pressure Relief Valve of the Fermenter that Defendant Spike Brewing sold and delivered to Plaintiff.

8.      Hereinafter, Defendants Conrader Holdings and Pennlake may be referred to collectively as the "Conrader Defendants."

9.      Hereinafter, Defendants Winters Instruments, Clampco Products, Conrader Holdings, and Pennlake may be referred to collectively as "Component Part Manufacturers," and the Pressure Gauge, Pressure Relief Valve, and Lid Clamp may be referred to as the "Component Parts."

### JURISDICITON AND VENUE

10.      This Court has personal jurisdiction over Defendant Spike Brewing pursuant to the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, as this lawsuit arises out of a tort committed by Defendant Spike Brewing in whole or in part in Texas. Defendant Spike Brewing purposefully availed itself of the privileges and benefits of conducting business in Texas by directing its product sales to this State and maintaining such minimum contacts with this State

such that the assumption of jurisdiction by this Court does not offend traditional notions of fair play and substantial justice.

11.     This Court has personal jurisdiction over Defendant Clampco Products pursuant to the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, as this lawsuit arises out of a tort committed by Defendant Clampco Products in whole or in part in Texas. Upon information and belief Defendant Clampco Products knew that its Lid Clamp would be included with every Fermenter sold by Defendant Spike Brewing. Upon further information and belief, Defendant Spike Brewing communicated to Defendant Clampco Products that the Fermenter, and necessarily the Lid Clamp, would be marketed, sold, and distributed both online and nationwide. Through party discovery, Plaintiff has learned that Defendants Clampco Products was sufficiently familiar with the Fermenter and Spike Brewing's target market to expect that the Fermenter, and necessarily the Lid Clamp, would be sold and distributed online and nationwide. Further, Defendant Spike Brewing has purchased at least 3,000 Lid Clamps from Defendant Clampco Products. Based on that amount alone, Defendant Clampco Products, a self-proclaimed "worldwide clamping company" with experience distributing its products globally, should have reasonably foreseen that Defendant Spike Brewing would be selling and distributing the Fermenter, and necessarily the Lid Clamp, on a national scale, and that its Lid Clamps would likely make their way to Texas, the second most populous state in the nation. Upon further information and belief, Defendant Clampco Products never attempted to limit Defendant Spike Brewing's sale or distribution of the Fermenter, and necessarily the Lid Clamp, or to otherwise prevent the Fermenter or Lid Clamp from being sold or distributed to the State of Texas. By the conduct described above, Defendant Clampco Products directed its product sales to this State by delivering its products, including the Lid Clamp, into the stream of commerce with the expectation that it

would be purchased or used by consumers in this State and by failing to attempt to prevent its products sale or distribution to this State. Defendant Clampco Products thereby purposefully availed itself of the privileges and benefits of conducting business in Texas and maintained such minimum contacts with this State such that the assumption of jurisdiction by this Court does not offend traditional notions of fair play and substantial justice.

12.     This Court has personal jurisdiction over the Conrader Defendants pursuant to the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, as this lawsuit arises out of a tort committed by the Conrader Defendants in whole or in part in Texas. Upon information and belief, the Conrader Defendants knew that their Pressure Relief Valve would be marketed, sold, and distributed by Defendant Spike Brewing online and nationwide, including to the State of Texas. Upon further information and belief, Defendant Spike Brewing communicated to the Conrader Defendants that the Pressure Relief Valve would be marketed, sold, and distributed both online and nationwide, including to the State of Texas. Upon further information and belief, Defendant Spike Brewing has purchased over 2,000 Pressure Relief Valves from the Conrader Defendants. Based on that amount alone, the Conrader Defendants should have reasonably foreseen that Defendant Spike Brewing would be selling and distributing the Pressure Relief Valve on a national scale, and that their Pressure Relief Valve would likely make their way to Texas, the second most populous state in the nation. Upon further information and belief, the Conrader Defendants never attempted to limit Defendant Spike Brewing's sale or distribution of the Pressure Relief Valve or to otherwise prevent the Pressure Relief Valve from being sold or distributed to the State of Texas. By the conduct described above, the Conrader Defendants directed their product sales to this State by delivering their products, including the Pressure Relief Valve, into the stream of commerce with the expectation that they would be purchased or used by consumers in this State and by failing

to attempt to prevent their products' sale or distribution to this State. The Conrader Defendants thereby purposefully availed themselves of the privileges and benefits of conducting business in Texas and maintained such minimum contacts with this State such that the assumption of jurisdiction by this Court does not offend traditional notions of fair play and substantial justice.

13.     This Court has personal jurisdiction over Defendant Winters Instruments pursuant to the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, as this lawsuit arises out of a tort committed by Defendant Winters Instruments in whole or in part in Texas. Upon information and belief Defendant Winters Instruments knew that its Pressure Gauge would be marketed, sold, and distributed by Defendant Spike Brewing online and nationwide, including to the State of Texas. Upon further information and belief, Defendant Spike Brewing communicated to Defendant Winters Instruments that the Pressure Gauge, would be marketed, sold, and distributed both online and nationwide, including to the State of Texas. Upon further information and belief, Defendant Spike Brewing has purchased at least 1,000 Pressure Gauges from Defendant Winters Instruments. Based on that amount alone, Defendant Winters Instruments should have reasonably foreseen that Defendant Spike Brewing would be selling and distributing the Pressure Gauge on a national scale and that the Pressure Gauges would likely make their way to Texas, the second most populous state in the nation. Upon further information and belief, Defendant Winters Instruments never attempted to limit Defendant Spike Brewing's sale or distribution of the Pressure Gauge or attempted to otherwise prevent the Pressure Gauge from being sold or distributed to the State of Texas. By the conduct described above, Defendant Winters Instruments directed its product sales to this State by delivering its products, including the Pressure Gauge, into the stream of commerce with the expectation that it would be purchased or used by consumers in this State and by failing to attempt to prevent its products sale or distribution to this State.

Furthermore, Defendant Winters Instruments maintains a corporate office in Houston, Texas, which, upon information and belief, is also the location from which it ships many of its products, including the Pressure Gauge. Defendant Winters Instruments thereby purposefully availed itself of the privileges and benefits of conducting business in Texas and maintained such minimum contacts with this State such that the assumption of jurisdiction by this Court does not offend traditional notions of fair play and substantial justice.

14.    Upon information and belief, this Court has personal jurisdiction over Defendant Changshu pursuant to the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, as this lawsuit arises out of a tort committed by Defendant Changshu in whole or in part in Texas. Upon information and belief, it was foreseeable to Defendant Changshu, and Defendant Chanshu was aware that its Pressure Gauge would be marketed, sold, and distributed by Defendants Winters Instruments and/or Spike Brewing online and nationwide, including to the State of Texas. Upon further information and belief, Defendant Winters Instruments communicated to Defendant Changshu that the Pressure Gauge, would be marketed, sold, and distributed both online and nationwide, including to the State of Texas. Upon further information and belief, Defendant Winters Instruments has purchased at least 1,000 Pressure Gauges from Defendant Changshu, who delivered said Pressure Gauges to Houston, Texas. Based on that amount alone, Defendant Changshu, a global distributor, should have reasonably foreseen that Defendant Winters Instruments would be selling and distributing the Pressure Gauge on a national scale, and that its Pressure Gauges would likely make their way to Texas, the second most populous state in the nation. Upon further information and belief, Defendant Changshu never attempted to limit the sale or distribution of the Pressure Gauge or attempted to otherwise prevent the Pressure Gauge from being sold or distributed to the State of Texas. By the conduct described above, Defendant

Changshu directed its product sales to this State by delivering its products, including the Pressure Gauge, into the stream of commerce with the expectation that it would be purchased or used by consumers in this State and by failing to attempt to prevent its products sale or distribution to this State. Defendant Changshu thereby purposefully availed itself of the privileges and benefits of conducting business in Texas and maintained such minimum contacts with this State such that the assumption of jurisdiction by this Court does not offend traditional notions of fair play and substantial justice.

15.     The Court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(l) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

16.     Venue is proper in this district under 28 U.S.C. §1391(b)(2) because all or a substantial part of the events or omissions giving rise to these claims occurred in this district, and a substantial part of the property that is the subject of the action is situated in this district.

## FACTUAL BACKGROUND

17.     On or about February 12, 2018, Plaintiff purchased the Fermenter[1] from Spike Brewing. As stated previously, Spike Brewing is the designer, manufacturer, producer, distributor, vendor, and seller of and/or marketing entity of the Fermenter.

18.     The Fermenter is a stainless-steel tank used in the process of brewing beer at home. According to Spike Brewing's website, the Fermenter is a scaled down version of a conical fermenting tank used at professional breweries and it is designed to allow the homebrewer to carbonate beer while still in the Fermenter to quicken the brewing process.[2]

---

[1] *See* https://spikebrewing.com/collections/fermenters/products/cf15.
[2] *See* https://spikebrewing.com/pages/fermenters & https://spikebrewing.com/products/carb-stone.

The product is designed to hold pressure up to the 15psi of pressure needed to carbonate the beer before transferring to a keg.[3]

19.     On top of the Fermenter sits a lid secured by the Lid Clamp, which together are described in a video on Spike Brewing's website as "high pressure,"[4] indicating that the Lid Clamp can secure the lid up to at least the 15psi of internal pressure needed to carbonate the beer. The lid is detachable to allow access to the inside of the tank for cleaning. The Lid Clamp consists of a metal band that wraps around the lid and is tightened by twisting a T-bolt into a latch on the clamp.[5]

20.     Upon information and belief, Defendant Clampco Products is the manufacturer and/or producer of the Lid Clamp and supplied the Lid Clamp to Spike Brewing, who then included the Lid Clamp with the Fermenter and delivered both to Plaintiff. Upon further information and belief, Defendants Spike Brewing and Clampco Products both participated in the design of the Lid Clamp.

21.     On or about February 16, 2018, Plaintiff also purchased from Spike Brewing a Pressure Gauge and 15psi Pressure Relief Valve. The Pressure Gauge is designed to measure and display the psi level inside the tank.[6] The Pressure Relief Valve is designed to automatically release excess pressure and also has a bleeder pull ring with which customers such as Plaintiff may engage to manually release pressure from the tank and adjust the internal psi level as needed.[7]

---

[3] *See* https://spikebrewing.com/products/carb-stone.
[4] *See* https://spikebrewing.com/collections/fermenters.
[5] *See* Degroote, John, "Lid gasket installation instructions", Spike Brewing (January 17, 2018) <https://spikebrewing.freshdesk.com/support/solutions/articles/35000045928-lid-gasket-installation-instructions>.
[6] *See* https://spikebrewing.com/collections/conical-accessories/products/pressure-gauge.
[7] *See* https://spikebrewing.com/products/15psi-pressure-relief-valve.

22.     Upon information and belief, Defendants Winters Instruments and/or Changshu are the manufacturer and/or producer of the Pressure Gauge and supplied the Pressure Gauge to Spike Brewing, who then advertised, sold, and delivered the Pressure Gauge to Plaintiff. Upon further information and belief, Defendants Spike Brewing, Winters Instruments, and/or Changshu participated in the design of the Pressure Gauge.

23.     Upon information and belief, the Conrader Defendants are the manufacturers and/or producers of the Pressure Relief Valve and supplied the Pressure Relief Valve to Spike Brewing, who then advertised, sold, and delivered the Pressure Relief Valve to Plaintiff. Upon further information and belief, Defendant Spike Brewing and the Conrader Defendants participated in the design of the Pressure Relief Valve.

24.     On May 15, 2018, Plaintiff, with the assistance of his friend, Kevin Yackley, who has thirty years of experience in brewing, used the Fermenter and followed all instructions enclosed with the Fermenter. Plaintiff and Mr. Yackley finished the last step of transferring the beer from the Fermenter to the kegs and then prepared to clean the inside of the tank. Plaintiff first engaged the bleeder pull ring on the Pressure Relief Valve to manually release the pressure inside the Fermenter until he could no longer hear the hissing of air escaping from the valve. He then checked the Pressure Gauge to confirm he had released all the pressure from inside the tank. The needle on the Pressure Gauge was resting at or about 0psi, but in any event no greater than 2psi. Believing the tank to be depressurized, Plaintiff attempted to loosen the Lid Clamp by twisting the T-bolt. Plaintiff had rotated the T-bolt, at most, only one-half turn, when, suddenly and without warning, the lid blew off the Fermenter and struck Plaintiff in the face, crushing his right orbital bone and right eye and lacerating his forehead.

25.     Plaintiff was rushed to the hospital following the incident, where he underwent treatment of his severe injuries. Doctors attempted to save Plaintiff's eye, but the damage was too extensive, and his eye had to be removed and replaced with a prosthetic. To date, Plaintiff continues to endure pain and discomfort from his injuries and continues to accrue medical expenses related to the treatment of said injuries.

26.     Plaintiff did not modify the Fermenter or the Component Parts in any way before using them. The surface on which the Fermenter was being used was level, nothing was obstructing or surrounding the Fermenter, and nothing was atop the lid of the Fermenter.

27.     None of the instructions provided by Defendants, whether enclosed with the Fermenter or Component Parts, or published online, include any warnings relating to the lid possibly blowing off the tank or any cautionary directions to prevent such an incident from occurring. Neither are there any warnings or directions to that effect printed or otherwise displayed on the Fermenter or Component Parts.

28.     The Fermenter also lacks any redundant safety system designed to prevent the lid from blowing off the tank should the Lid Clamp fail to do so, as it did in this case. For instance, Plaintiff has used other fermenters with several clasps affixed to the tank that lock over the lid, such that even if one clasp fails, others remain to hold the lid in position or at least keep it from blowing off at high speed.

29.     Defendants' failure to take reasonable care in developing, designing, manufacturing, testing, selling, and/or marketing products and components free from defects and safe for consumer use, and Spike Brewing's failure to adequately warn consumers of foreseeable dangers related to its product and component parts, proximately caused Plaintiff's injuries and damages.

## COUNT 1
## NEGLIGENCE – SPIKE BREWING

30.     Plaintiff incorporates the facts and allegations in the preceding paragraphs as if fully set forth herein.

31.     Defendant Spike Brewing was negligent in developing, designing, manufacturing, testing, selling, and/or marketing the Fermenter and the Components.

32.     At all times material hereto, the Fermenter and Component Parts were being used by Plaintiff for the foreseeable intended purposes for which they were developed, designed, manufactured, tested, sold, and/or marketed. Plaintiff was the foreseeable intended user of the Fermenter and Component Parts.

33.     Defendant Spike Brewing owed a duty to Plaintiff to use reasonable care in developing, designing, manufacturing, testing, selling, and/or marketing products and component parts free from defects in material or workmanship that were safe and functional for consumer use and did not pose a foreseeable risk of harm to consumers. Defendant Spike Brewing failed to exercise such reasonable care.

34.     Defendant Spike Brewing owed a duty to Plaintiff to adequately warn of the dangers inherent in the use of the product and component parts it developed, designed, manufactured, tested, sold, and/or marketed. Defendant Spike Brewing failed to adequately warn consumers of the dangers inherent in its product and component parts that are the subject of this suit.

35.     Plaintiff's injuries and damages are the direct and proximate result of the Defendant Spike Brewing's negligence, as well as that of its agents, servants, employees, and apparent agents acting within and during the scope of their employment, authority, or apparent

authority. Plaintiff's injuries and damages are not due to any act or failure on the part of Plaintiff.

36.     Defendant Spike Brewing was negligent in one or more of the following respects:

      a.  Failing to take appropriate steps to ensure the Fermenter lid could not blow off the tank;

      b.  Failing to conduct an appropriate inspection of the Fermenter and/or Component Parts;

      c.  Marketing, selling, and shipping the Fermenter and/or Component Parts in an unsafe condition;

      d.  Failing to provide users of the Fermenter and/or Component Parts with adequate instructions for their safe use;

      e.  Failing to provide users of the Fermenter and/or Component Parts, such as Plaintiff, with adequate warnings concerning their use;

      f.  Failing to warn users of the Fermenter and/or Component Parts, such as Plaintiff, that serious injury could occur if the user attempts to open the lid where there is 2psi or less of internal pressure within the Fermenter;

      g.  Failing to warn users of the Fermenter and/or Component Parts, such as Plaintiff, that the psi level displayed by the Pressure Gauge may not accurately reflect the internal pressure of the Fermenter;

      h.  Failing to warn users of the Fermenter and/or Component Parts, such as Plaintiff, that engaging the bleeder pull ring on the Pressure Relief Valve might fail to fully depressurize the contents of the Fermenter;

i.  Failing to warn users of the Fermenter and/or Component Parts, such as Plaintiff, that engaging the bleeder pull ring on the Pressure Relief Valve until the hissing of air escaping from the valve can no longer be heard might fail to fully depressurize the contents of the Fermenter;

j.  Failing to warn users of the Fermenter and/or Component Parts, such as Plaintiff, that the Lid Clamp may not secure the lid on the Fermenter while its contents were under pressure;

k.  Failing to thoroughly and adequately test the Fermenter and/or Component Parts to ensure that the lid could not be discharged from the Fermenter in the course of use;

l.  Designing and/or selling the Fermenter with the capacity to retain pressure despite prolonged opening of the Pressure Relief Valve;

m.  Failing to equip the Fermenter with properly functioning safety features which would prevent its lid from opening while the Fermenter's contents were under pressure;

n.  Failing to prevent damage to, or sticking, or unexpected loosening, or malfunction of, the Fermenter's safety features;

o.  Failing to provide a safe, appropriate, and effective mechanism for securing the lid of the Fermenter;

p.  Designing the Fermenter and/or Component Parts in such a way that it is not apparent to the user that the internal pressure of the Fermenter is such that the lid could blow off at high speed;

q.  Failing to design the Fermenter and/or Component Parts with a warning mechanism that would allow a user to recognize that the Fermenter was still under pressure;

r.  Failing to discover defects in, and the dangerous condition of, the Fermenter and/or Component Parts;

s.  Failing to remedy the defects in, and the dangerous condition of, the Fermenter and/or Component Parts;

t.  Failing to discover defects in, and dangerous inadequacies of, the instructions and warnings provided with the Fermenter and/or Component Parts;

u.  Failing to properly test, evaluate, inspect, and assemble the Fermenter and/or Component Parts;

v.  Failing to properly design, manufacture, and advertise the Fermenter and/or Component Parts to ensure that they were not unreasonably dangerous;

w.  Failing to warn the public in general, and Plaintiff in particular, of the dangers presented by the use of the Fermenter and/or Component Parts;

x.  Failing to exercise due care and act with regard for the safety of those using its products; and

y.  Such other and further acts and/or omissions as may be shown by the evidence at the trial of this cause.

37.    Each of the above-listed acts and/or omissions, taken singularly or in combination, was a proximate cause of Plaintiff's injuries and damages. The above and foregoing acts and omissions of Defendant Spike Brewing constitute negligence, which was

17

the proximate cause of Plaintiff's resulting injuries and damages. Nothing Plaintiff did or failed to do caused or contributed to cause the occurrence made the basis of this suit.

38.    As a direct and proximate result of Defendant Spike Brewing's conduct, Plaintiff suffered the following injuries and damages:

      a.   Medical expenses in the past and future;

      b.   Physical pain and mental anguish in the past and future;

      c.   Disfigurement in the past and future;

      d.   Physical impairment in the past and future; and

      e.   Past lost wages.

## COUNT 2
## STRICT LIABILITY – SPIKE BREWING

39.    Plaintiff incorporates the facts and allegations in the preceding paragraphs as if fully set forth herein.

40.    Defendant Spike Brewing is the manufacturer, designer, distributor, and/or seller of the Fermenter. Upon information and belief, Defendant Spike Brewing participated in the design of the Component Parts. Defendant Spike Brewing sold and delivered the Fermenter and Component Parts to Plaintiff.

41.    At all times prior to delivery, the Fermenter was in the exclusive control of Defendant Spike Brewing, its agents, servants, employees, and/or apparent agents, and was delivered to Plaintiff without substantial change in its condition.

42.    At all times prior to delivery, the Component Parts were in the exclusive control of Defendants, their agents, servants, employees, and/or apparent agents, and were delivered to Plaintiff without substantial change in their condition.

43.     The Fermenter and Component Parts were used by Plaintiff as designed and intended by Defendant Spike Brewing, without any change in their condition from the time they left the control of the Defendant Spike Brewing until they were used by Plaintiff.

44.     The Fermenter and/or Component Parts, which were sold and delivered to Plaintiff by Defendant Spike Brewing and used by Plaintiff, were, at the time of sale and delivery, in a defective condition and unreasonably dangerous to the user.

45.     The Fermenter and/or Component Parts were defective and unreasonably dangerous in that they failed to conform to the product design and specifications of other homebrewing conical fermenters currently sold in the market with alternative safety features that would have prevented the sudden and unexpected ejection of the lid when used in accordance with the instructions provided. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

46.     The Fermenter and/or Component Parts were defective and unreasonably dangerous due to the hazard created by the ability of the lid to come off while the Fermenter's contents were under pressure and by the inability of an ordinary user to recognize that the contents were under pressure. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

47.     The Fermenter and/or Component Parts were defective and unreasonably dangerous due to the hazard created by the Pressure Gauge not accurately measuring and displaying the amount of internal pressure within the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

48.     The Fermenter and/or Component Parts were defective and unreasonably dangerous due to the hazard created by the Pressure Relief Valve not releasing the pressure

within the Fermenter while the bleeder pull ring was engaged. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

49.     The Fermenter and/or Component Parts were defective and unreasonably dangerous because there was a lack of adequate warnings and notices that the Fermenter could inadvertently eject its lid in a way not warned of or contemplated by the ordinary user of the product. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

50.     The Fermenter and/or Component Parts were defective and unreasonably dangerous because there was a lack of adequate warnings and notices that serious injury could occur if a user of the Fermenter, such as Plaintiff, attempts to open the lid of the Fermenter when there is 2psi or less of internal pressure within the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

51.     The Fermenter and/or Component Parts were defective and unreasonably dangerous because there was a lack of adequate warnings and notices that the Pressure Gauge might not accurately measure and display the amount of internal pressure within the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

52.     The Fermenter and/or Component Parts were defective and unreasonably dangerous because there was a lack of adequate warnings and notices that engaging the bleeder pull ring on the Pressure Relief Valve might fail to release the pressure within the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

53.     The Fermenter and/or Component Parts were defective and unreasonably dangerous because there was a lack of adequate warnings and notices that engaging the bleeder pull ring on the Pressure Relief Valve until the hissing of air escaping from the valve can no longer

be heard might fail to fully depressurize the contents of the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

54.     The Fermenter and/or Component Parts were defective and unreasonably dangerous because there was a lack of adequate warnings and notices that the Lid Clamp may not secure the lid on the Fermenter while its contents were under pressure. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

55.     As a direct result of the defective condition of the Fermenter and/or Component Parts, Plaintiff sustained the injuries and losses described herein. Had the Fermenter and/or Component Parts not been manufactured, designed, distributed, or sold by Defendant Spike Brewing in such an unreasonably dangerous condition, Plaintiff's injuries would not have occurred.

56.     As a direct and proximate result of Defendant Spike Brewing's conduct, Plaintiff suffered the following injuries and damages:

        a.   Medical expenses in the past and future;

        b.   Physical pain and mental anguish in the past and future;

        c.   Disfigurement in the past and future;

        d.   Physical impairment in the past and future; and

        e.   Past lost wages.

57.     Defendant Spike Brewing exercised substantial control over the content of the warnings and instructions that accompanied the Fermenter and Component Parts, said warnings and instructions were inadequate, and Plaintiff's injuries and damages resulted from the inadequacy of the warnings and instructions.

58.     Defendant Spike Brewing made express factual representations regarding aspects of the Fermenter and its Component Parts on its website that were incorrect, including but not limited to the following: that the Lid Clamp can secure the lid of the Fermenter up to at least 15psi of internal pressure; that the Pressure Relief Valve will prevent the tank from being over pressurized and causing a potential failure to occur; and that the bleeder pull ring on the Pressure Relief Valve can be used to release built up pressure. Plaintiff relied on these representations in obtaining and using the Fermenter and Component Parts and had the aspects of the Fermenter and Component Parts been as represented, Plaintiff would not have suffered the above described injuries and damages.

**COUNT 3**
**NEGLIGENCE – WINTERS INSTRUMENTS**

59.     Plaintiff incorporates the facts and allegations in the preceding paragraphs as if fully set forth herein.

60.     Defendant Winters Instruments was negligent in developing, designing, manufacturing, and/or testing the Pressure Gauge.

61.     At all times material hereto, the Pressure Gauge was being used by Plaintiff for the foreseeable intended purposes for which it was developed, designed, manufactured, tested, sold, and/or marketed. Plaintiff was the foreseeable intended user of the Pressure Gauge.

62.     Defendant Winters Instruments owed a duty to Plaintiff to use reasonable care in developing, designing, manufacturing, and testing products free from defects in material or workmanship that were safe and functional for consumer use and did not pose a foreseeable risk of harm to consumers. Defendant Winters Instruments failed to exercise such reasonable care.

63.     Plaintiff's injuries and damages are the direct and proximate result of the Defendant Winters Instruments's negligence, as well as that of its agents, servants, employees, and apparent agents acting within and during the scope of their employment, authority, or apparent authority. Plaintiff's injuries and damages are not due to any act or failure on the part of Plaintiff.

64.     Defendant Winters Instruments was negligent in one or more of the following respects:

a.  Failing to take appropriate steps to ensure the Pressure Gauge could accurately measure and display the internal pressure of the Fermenter;

b.  Failing to conduct an appropriate inspection of the Pressure Gauge;

c.  Failing to thoroughly and adequately test the Pressure Gauge to ensure that it did not measure and/or display an incorrect level of internal pressure in the Fermenter in the course of use;

d.  Designing and/or manufacturing the Pressure Gauge with the capacity to inaccurately measure and/or display the internal pressure of the Fermenter;

e.  Failing to prevent damage to, or sticking or malfunction of, the Pressure Gauge;

f.  Failing to provide a safe, appropriate, and effective mechanism for measuring and displaying the internal pressure of the Fermenter;

g.  Failing to provide users of the Pressure Gauge, such as Plaintiff, with adequate instructions for its safe use;

h.  Designing the Pressure Gauge in such a way that it is not apparent to the user that the Fermenter has retained a level of internal pressure greater than that displayed on the Pressure Gauge;

i.  Failing to design the Pressure Gauge with a warning mechanism that would allow a user to recognize that the Pressure Gauge was not properly measuring and/or displaying the true internal pressure of the Fermenter;

j.  Failing to warn users of the Pressure Gauge, such as Plaintiff, that the psi level displayed by the Pressure Gauge may not accurately reflect the internal pressure of the Fermenter;

k.  Failing to warn users of the Pressure Gauge, such as Plaintiff, that serious injury may occur if a user attempts to remove the lid of a tank containing 2psi or less of internal pressure;

l.  Failing to discover defects in, and the dangerous condition of, the Pressure Gauge;

m.  Failing to remedy the defects in, and the dangerous condition of, the Pressure Gauge;

n.  Failing to properly test, evaluate, inspect, and assemble the Pressure Gauge;

o.  Failing to properly design and/or manufacture the Pressure Gauge to ensure that it was not unreasonably dangerous;

p.  Failing to warn the public in general, and Plaintiff in particular, of the dangers presented by the use of the Pressure Gauge;

q.  Failing to exercise due care and act with regard for the safety of those using its products; and

r. Such other and further acts and/or omissions as may be shown by the evidence at the trial of this cause.

65. Each of the above-listed acts and/or omissions, taken singularly or in combination, was a proximate cause of Plaintiff's injuries and damages. The above and foregoing acts and omissions of Defendant Winters Instruments constitute negligence, which was the proximate cause of Plaintiff's resulting injuries and damages. Nothing Plaintiff did or failed to do caused or contributed to cause the occurrence made the basis of this suit.

66. As a direct and proximate result of Defendant Winters Instruments's conduct, Plaintiff suffered the following injuries and damages:

a. Medical expenses in the past and future;

b. Physical pain and mental anguish in the past and future;

c. Disfigurement in the past and future;

d. Physical impairment in the past and future; and

e. Past lost wages.

## COUNT 4
## STRICT LIABILITY – WINTERS INSTRUMENTS

67. Plaintiff incorporates the facts and allegations in the preceding paragraphs as if fully set forth herein.

68. Defendant Winters Instruments is the manufacturer, co-designer, and/or supplier of the Pressure Gauge. Defendant Winters Instruments supplied the Pressure Gauge to Spike Brewing, who then sold and delivered the Pressure Gauge to Plaintiff.

69. At all times prior to delivery, the Pressure Gauge was in the exclusive control of Defendant Winters Instruments and/or Spike Brewing, their agents, servants, employees,

and/or apparent agents, and was delivered to Plaintiff without substantial change in its condition.

70.    The Pressure Gauge was used by Plaintiff as designed and intended by Defendant Winters Instruments and/or Spike Brewing, without any change in its condition from the time it left the control of the Defendant Winters Instruments and/or Spike Brewing until it was used by Plaintiff.

71.    The Pressure Gauge, which was sold and delivered to Plaintiff by Spike Brewing and used by Plaintiff, was, at the time of sale and delivery, in a defective condition and unreasonably dangerous to the user.

72.    The Pressure Gauge was defective and unreasonably dangerous due to the hazard created by the Pressure Gauge not accurately measuring and displaying the amount of internal pressure within the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

73.    The Pressure Gauge was defective and unreasonably dangerous because there was a lack of adequate warnings and notices that the Pressure Gauge might not accurately measure and display the amount of internal pressure within the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

74.    As a direct result of the defective condition of the Pressure Gauge, Plaintiff sustained the injuries and losses described herein. Had Pressure Gauge not been manufactured, designed, distributed, or supplied by Defendant Winters Instruments in such an unreasonably dangerous condition, Plaintiff's injuries would not have occurred.

75.    As a direct and proximate result of Defendant Winters Instruments's conduct, Plaintiff suffered the following injuries and damages:

  a. Medical expenses in the past and future;

  b. Physical pain and mental anguish in the past and future;

  c. Disfigurement in the past and future;

  d. Physical impairment in the past and future; and

  e. Past lost wages.

## COUNT 5
## NEGLIGENCE – CHANGSHU

76. Plaintiff incorporates the facts and allegations in the preceding paragraphs as if fully set forth herein.

77. Defendant Changshu was negligent in developing, designing, manufacturing, and/or testing the Pressure Gauge.

78. At all times material hereto, the Pressure Gauge was being used by Plaintiff for the foreseeable intended purposes for which it was developed, designed, manufactured, tested, sold, and/or marketed. Plaintiff was the foreseeable intended user of the Pressure Gauge.

79. Defendant Changshu owed a duty to Plaintiff to use reasonable care in developing, designing, manufacturing, and testing products free from defects in material or workmanship that were safe and functional for consumer use and did not pose a foreseeable risk of harm to consumers. Defendant Changshu failed to exercise such reasonable care.

80. Plaintiff's injuries and damages are the direct and proximate result of the Defendant Changshu's negligence, as well as that of its agents, servants, employees, and apparent agents acting within and during the scope of their employment, authority, or apparent authority. Plaintiff's injuries and damages are not due to any act or failure on the part of Plaintiff.

81. Defendant Changshu was negligent in one or more of the following respects:

a. Failing to take appropriate steps to ensure the Pressure Gauge could accurately measure and display the internal pressure of the Fermenter;

b. Failing to conduct an appropriate inspection of the Pressure Gauge;

c. Failing to thoroughly and adequately test the Pressure Gauge to ensure that it did not measure and/or display an incorrect level of internal pressure in the Fermenter in the course of use;

d. Designing and/or manufacturing the Pressure Gauge with the capacity to inaccurately measure and/or display the internal pressure of the Fermenter;

e. Failing to prevent damage to, or sticking or malfunction of, the Pressure Gauge;

f. Failing to provide a safe, appropriate, and effective mechanism for measuring and displaying the internal pressure of the Fermenter;

g. Failing to provide users of the Pressure Gauge, such as Plaintiff, with adequate instructions for its safe use;

h. Designing the Pressure Gauge in such a way that it is not apparent to the user that the Fermenter has retained a level of internal pressure greater than that displayed on the Pressure Gauge;

i. Failing to design the Pressure Gauge with a warning mechanism that would allow a user to recognize that the Pressure Gauge was not properly measuring and/or displaying the true internal pressure of the Fermenter;

j. Failing to warn users of the Pressure Gauge, such as Plaintiff, that the psi level displayed by the Pressure Gauge may not accurately reflect the internal pressure of the Fermenter;

k. Failing to warn users of the Pressure Gauge, such as Plaintiff, that serious injury may occur if a user attempts to remove the lid of a tank containing 2psi or less of internal pressure;

l. Failing to discover defects in, and the dangerous condition of, the Pressure Gauge;

m. Failing to remedy the defects in, and the dangerous condition of, the Pressure Gauge;

n. Failing to properly test, evaluate, inspect, and assemble the Pressure Gauge;

o. Failing to properly design and/or manufacture the Pressure Gauge to ensure that it was not unreasonably dangerous;

p. Failing to warn the public in general, and Plaintiff in particular, of the dangers presented by the use of the Pressure Gauge;

q. Failing to exercise due care and act with regard for the safety of those using its products; and

r. Such other and further acts and/or omissions as may be shown by the evidence at the trial of this cause.

82.   Each of the above-listed acts and/or omissions, taken singularly or in combination, was a proximate cause of Plaintiff's injuries and damages. The above and foregoing acts and omissions of Defendant Changshu constitute negligence, which was the proximate cause of Plaintiff's resulting injuries and damages. Nothing Plaintiff did or failed to do caused or contributed to cause the occurrence made the basis of this suit.

83.   As a direct and proximate result of Defendant Changshu's conduct, Plaintiff suffered the following injuries and damages:

a.  Medical expenses in the past and future;

b.  Physical pain and mental anguish in the past and future;

c.  Disfigurement in the past and future;

d.  Physical impairment in the past and future; and

e.  Past lost wages.

**COUNT 6**
**STRICT LIABILITY – CHANGSHU**

84.     Plaintiff incorporates the facts and allegations in the preceding paragraphs as if fully set forth herein.

85.     Defendant Changshu is the manufacturer, co-designer, and/or supplier of the Pressure Gauge. Defendant Changshu supplied the Pressure Gauge to Winters Instruments, who then supplied the Pressure Gauge to Spike Brewing, who then sold and delivered the Pressure Gauge to Plaintiff.

86.     At all times prior to delivery, the Pressure Gauge was in the exclusive control of Defendants Changshu, Winters Instruments, and/or Spike Brewing, their agents, servants, employees, and/or apparent agents, and was delivered to Plaintiff without substantial change in its condition.

87.     The Pressure Gauge was used by Plaintiff as designed and intended by Defendant Changshu and/or Spike Brewing, without any change in its condition from the time it left the control of the Defendants Changshu, Winters Instruments, and/or Spike Brewing until it was used by Plaintiff.

88.     The Pressure Gauge, which was sold and delivered to Plaintiff by Spike Brewing and used by Plaintiff, was, at the time of sale and delivery, in a defective condition and unreasonably dangerous to the user.

89.     The Pressure Gauge was defective and unreasonably dangerous due to the hazard created by the Pressure Gauge not accurately measuring and displaying the amount of internal pressure within the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

90.     The Pressure Gauge was defective and unreasonably dangerous because there was a lack of adequate warnings and notices that the Pressure Gauge might not accurately measure and display the amount of internal pressure within the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

91.     As a direct result of the defective condition of the Pressure Gauge, Plaintiff sustained the injuries and losses described herein. Had the Pressure Gauge not been manufactured, designed, distributed, or supplied by Defendant Changshu in such an unreasonably dangerous condition, Plaintiff's injuries would not have occurred.

92.     As a direct and proximate result of Defendant Changshu's conduct, Plaintiff suffered the following injuries and damages:

     a.   Medical expenses in the past and future;

     b.   Physical pain and mental anguish in the past and future;

     c.   Disfigurement in the past and future;

     d.   Physical impairment in the past and future; and

     e.   Past lost wages.

**COUNT 7**
**NEGLIGENCE – CONRADER HOLDINGS**

93.     Plaintiff incorporates the facts and allegations in the preceding paragraphs as if fully set forth herein.

94.     Conrader Holdings was negligent in developing, designing, manufacturing, and/or testing the Pressure Relief Valve.

95.     At all times material hereto, the Pressure Relief Valve was being used by Plaintiff for the foreseeable intended purposes for which it was developed, designed, manufactured, tested, sold, and/or marketed. Plaintiff was the foreseeable intended user of the Pressure Relief Valve.

96.     Conrader Holdings owed a duty to Plaintiff to use reasonable care in developing, designing, manufacturing, and testing products free from defects in material or workmanship that were safe and functional for consumer use and did not pose a foreseeable risk of harm to consumers. Conrader Holdings failed to exercise such reasonable care.

97.     Plaintiff's injuries and damages are the direct and proximate result of Conrader Holdings's negligence, as well as that of its agents, servants, employees, and apparent agents acting within and during the scope of their employment, authority, or apparent authority. Plaintiff's injuries and damages are not due to any act or failure on the part of Plaintiff.

98.     Conrader Holdings was negligent in one or more of the following respects:

a.  Failing to take appropriate steps to ensure the Pressure Relief Valve could release the pressure within the Fermenter;

b.  Failing to conduct an appropriate inspection of the Pressure Relief Valve;

c.  Failing to thoroughly and adequately test the Pressure Relief Valve to ensure that it would not fail to release the pressure within the Ferment in the course of use;

d.  Designing and/or manufacturing the Pressure Relief Valve with the capacity to retain pressure within the Fermenter despite prolonged opening of the bleeder pull ring;

e.  Failing to prevent damage to, or sticking or malfunction of, the Pressure Relief Valve;

f.  Failing to provide a safe, appropriate, and effective mechanism for releasing pressure from the Fermenter;

g.  Failing to provide users of the Pressure Relief Valve, such as Plaintiff, with adequate instructions for its safe use;

h.  Designing the Pressure Relief Valve in such a way that it is not apparent to the user that the Fermenter has retained internal pressure despite prolonged opening of the bleeder pull ring;

i.  Failing to design the Pressure Relief Valve with a warning mechanism that would allow a user to recognize that the Pressure Relief Valve was not properly releasing pressure from the Fermenter;

j.  Failing to warn users of the Pressure Relief Valve, such as Plaintiff, that engaging the bleeder pull ring on the Pressure Relief Valve might fail to fully depressurize the contents of the Fermenter;

k.  Failing to warn users of the Pressure Relief Valve, such as Plaintiff, that engaging the bleeder pull ring on the Pressure Relief Valve until the hissing of air escaping from the valve can no longer be heard might fail to fully depressurize the contents of the Fermenter;

l.  Failing to discover defects in, and the dangerous condition of, the Pressure Relief Valve;

m.  Failing to remedy the defects in, and the dangerous condition of, the Pressure Relief Valve;

n.  Failing to properly test, evaluate, inspect, and assemble the Pressure Relief Valve;

o.  Failing to properly design and/or manufacture the Pressure Relief Valve to ensure that it was not unreasonably dangerous;

p.  Failing to warn the public in general, and Plaintiff in particular, of the dangers presented by the use of the Pressure Relief Valve;

q.  Failing to exercise due care and act with regard for the safety of those using its products; and

r.  Such other and further acts and/or omissions as may be shown by the evidence at the trial of this cause.

99.  Each of the above-listed acts and/or omissions, taken singularly or in combination, was a proximate cause of Plaintiff's injuries and damages. The above and foregoing acts and omissions of Conrader Holdings constitute negligence, which was the proximate cause of Plaintiff's resulting injuries and damages. Nothing Plaintiff did or failed to do caused or contributed to cause the occurrence made the basis of this suit.

100.  As a direct and proximate result of Conrader Holdings's conduct, Plaintiff suffered the following injuries and damages:

a.  Medical expenses in the past and future;

b.  Physical pain and mental anguish in the past and future;

    c.   Disfigurement in the past and future;

    d.   Physical impairment in the past and future; and

    e.   Past lost wages.

### COUNT 8
### STRICT LIABILITY – CONRADER HOLDINGS

101.    Plaintiff incorporates the facts and allegations in the preceding paragraphs as if fully set forth herein.

102.    Conrader Holdings is the manufacturer and/or co-designer of the Pressure Relief Valve. Conrader Holdings supplied the Pressure Relief Valve to Spike Brewing, who then sold and delivered the Pressure Relief Valve to Plaintiff.

103.    At all times prior to delivery, the Pressure Relief Valve was in the exclusive control of Conrader Holdings and/or Spike Brewing, their agents, servants, employees, and/or apparent agents, and was delivered to Plaintiff without substantial change in its condition.

104.    The Pressure Relief Valve was used by Plaintiff as designed and intended by Conrader Holdings and/or Spike Brewing, without any change in its condition from the time it left the control of Conrader Holdings and/or Spike Brewing until it was used by Plaintiff.

105.    The Pressure Relief Valve, which was sold and delivered to Plaintiff by Spike Brewing and used by Plaintiff, was, at the time of sale and delivery, in a defective condition and unreasonably dangerous to the user.

106.    The Pressure Relief Valve was defective and unreasonably dangerous due to the hazard created by the Pressure Relief Valve not releasing the pressure within the Fermenter while the bleeder pull ring was engaged. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

107.    The Pressure Relief Valve was defective and unreasonably dangerous because there was a lack of adequate warnings and notices that engaging the bleeder pull ring on the Pressure Relief Valve might fail to release the pressure within the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

108.    The Pressure Relief Valve was defective and unreasonably dangerous because there was a lack of adequate warnings and notices that engaging the bleeder pull ring on the Pressure Relief Valve until the hissing of air escaping from the valve can no longer be heard might fail to fully depressurize the contents of the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

109.    As a direct result of the defective condition of the Pressure Relief Valve, Plaintiff sustained the injuries and losses described herein. Had the Pressure Relief Valve not been manufactured, designed, distributed, or supplied by Conrader Holdings in such an unreasonably dangerous condition, Plaintiff's injuries would not have occurred.

110.    As a direct and proximate result of Conrader Holdings's conduct, Plaintiff suffered the following injuries and damages:

      a.   Medical expenses in the past and future;

      b.   Physical pain and mental anguish in the past and future;

      c.   Disfigurement in the past and future;

      d.   Physical impairment in the past and future; and

      e.   Past lost wages.

**COUNT 9**
**NEGLIGENCE – PENNLAKE**

111.    Plaintiff incorporates the facts and allegations in the preceding paragraphs as if fully set forth herein.

112.   Pennlake was negligent in developing, designing, manufacturing, and/or testing the Pressure Relief Valve.

113.   At all times material hereto, the Pressure Relief Valve was being used by Plaintiff for the foreseeable intended purposes for which it was developed, designed, manufactured, tested, sold, and/or marketed. Plaintiff was the foreseeable intended user of the Pressure Relief Valve.

114.   Pennlake owed a duty to Plaintiff to use reasonable care in developing, designing, manufacturing, and testing products free from defects in material or workmanship that were safe and functional for consumer use and did not pose a foreseeable risk of harm to consumers. Pennlake failed to exercise such reasonable care.

115.   Plaintiff's injuries and damages are the direct and proximate result of Pennlake's negligence, as well as that of its agents, servants, employees, and apparent agents acting within and during the scope of their employment, authority, or apparent authority. Plaintiff's injuries and damages are not due to any act or failure on the part of Plaintiff.

116.   Pennlake was negligent in one or more of the following respects:

    a.  Failing to take appropriate steps to ensure the Pressure Relief Valve could release the pressure within the Fermenter;

    b.  Failing to conduct an appropriate inspection of the Pressure Relief Valve;

    c.  Failing to thoroughly and adequately test the Pressure Relief Valve to ensure that it would not fail to release the pressure within the Ferment in the course of use;

d.  Designing and/or manufacturing the Pressure Relief Valve with the capacity to retain pressure within the Fermenter despite prolonged opening of the bleeder pull ring;

e.  Failing to prevent damage to, or sticking or malfunction of, the Pressure Relief Valve;

f.  Failing to provide a safe, appropriate, and effective mechanism for releasing pressure from the Fermenter;

g.  Failing to provide users of the Pressure Relief Valve, such as Plaintiff, with adequate instructions for its safe use;

h.  Designing the Pressure Relief Valve in such a way that it is not apparent to the user that the Fermenter has retained internal pressure despite prolonged opening of the bleeder pull ring;

i.  Failing to design the Pressure Relief Valve with a warning mechanism that would allow a user to recognize that the Pressure Relief Valve was not properly releasing pressure from the Fermenter;

j.  Failing to warn users of the Pressure Relief Valve, such as Plaintiff, that engaging the bleeder pull ring on the Pressure Relief Valve might fail to fully depressurize the contents of the Fermenter;

k.  Failing to warn users of the Pressure Relief Valve, such as Plaintiff, that engaging the bleeder pull ring on the Pressure Relief Valve until the hissing of air escaping from the valve can no longer be heard might fail to fully depressurize the contents of the Fermenter;

l.  Failing to discover defects in, and the dangerous condition of, the Pressure Relief Valve;

m.  Failing to remedy the defects in, and the dangerous condition of, the Pressure Relief Valve;

n.  Failing to properly test, evaluate, inspect, and assemble the Pressure Relief Valve;

o.  Failing to properly design and/or manufacture the Pressure Relief Valve to ensure that it was not unreasonably dangerous;

p.  Failing to warn the public in general, and Plaintiff in particular, of the dangers presented by the use of the Pressure Relief Valve;

q.  Failing to exercise due care and act with regard for the safety of those using its products; and

r.  Such other and further acts and/or omissions as may be shown by the evidence at the trial of this cause.

117.  Each of the above-listed acts and/or omissions, taken singularly or in combination, was a proximate cause of Plaintiff's injuries and damages. The above and foregoing acts and omissions of Pennlake constitute negligence, which was the proximate cause of Plaintiff's resulting injuries and damages. Nothing Plaintiff did or failed to do caused or contributed to cause the occurrence made the basis of this suit.

118.  As a direct and proximate result of Pennlake's conduct, Plaintiff suffered the following injuries and damages:

a.  Medical expenses in the past and future;

b.  Physical pain and mental anguish in the past and future;

  c. Disfigurement in the past and future;

  d. Physical impairment in the past and future; and

  e. Past lost wages.

**COUNT 10**
**STRICT LIABILITY – PENNLAKE**

119. Plaintiff incorporates the facts and allegations in the preceding paragraphs as if fully set forth herein.

120. Pennlake is the manufacturer and/or co-designer of the Pressure Relief Valve. Pennlake supplied the Pressure Relief Valve to Spike Brewing, who then sold and delivered the Pressure Relief Valve to Plaintiff.

121. At all times prior to delivery, the Pressure Relief Valve was in the exclusive control of Pennlake and/or Spike Brewing, their agents, servants, employees, and/or apparent agents, and was delivered to Plaintiff without substantial change in its condition.

122. The Pressure Relief Valve was used by Plaintiff as designed and intended by Pennlake and/or Spike Brewing, without any change in its condition from the time it left the control of Pennlake and/or Spike Brewing until it was used by Plaintiff.

123. The Pressure Relief Valve, which was sold and delivered to Plaintiff by Spike Brewing and used by Plaintiff, was, at the time of sale and delivery, in a defective condition and unreasonably dangerous to the user.

124. The Pressure Relief Valve was defective and unreasonably dangerous due to the hazard created by the Pressure Relief Valve not releasing the pressure within the Fermenter while the bleeder pull ring was engaged. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

125.     The Pressure Relief Valve was defective and unreasonably dangerous because there was a lack of adequate warnings and notices that engaging the bleeder pull ring on the Pressure Relief Valve might fail to release the pressure within the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

126.     The Pressure Relief Valve was defective and unreasonably dangerous because there was a lack of adequate warnings and notices that engaging the bleeder pull ring on the Pressure Relief Valve until the hissing of air escaping from the valve can no longer be heard might fail to fully depressurize the contents of the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

127.     As a direct result of the defective condition of the Pressure Relief Valve, Plaintiff sustained the injuries and losses described herein. Had the Pressure Relief Valve not been manufactured, designed, distributed, or supplied by Pennlake in such an unreasonably dangerous condition, Plaintiff's injuries would not have occurred.

128.     As a direct and proximate result of Pennlake's conduct, Plaintiff suffered the following injuries and damages:

      a.   Medical expenses in the past and future;

      b.   Physical pain and mental anguish in the past and future;

      c.   Disfigurement in the past and future;

      d.   Physical impairment in the past and future; and

      e.   Past lost wages.

## COUNT 11
## NEGLIGENCE – CLAMPCO PRODUCTS

129.     Plaintiff incorporates the facts and allegations in the preceding paragraphs as if fully set forth herein.

130.    Defendant Clampco Products was negligent in developing, designing, manufacturing, and/or testing the Lid Clamp.

131.    At all times material hereto, the Lid Clamp was being used by Plaintiff for the foreseeable intended purposes for which it was developed, designed, manufactured, tested, sold, and/or marketed. Plaintiff was the foreseeable intended user of the Lid Clamp.

132.    Defendant Clampco Products owed a duty to Plaintiff to use reasonable care in developing, designing, manufacturing, and testing products free from defects in material or workmanship that were safe and functional for consumer use and did not pose a foreseeable risk of harm to consumers. Defendant Clampco Products failed to exercise such reasonable care.

133.    Plaintiff's injuries and damages are the direct and proximate result of the Defendant Clampco Products's negligence, as well as that of its agents, servants, employees, and apparent agents acting within and during the scope of their employment, authority, or apparent authority. Plaintiff's injuries and damages are not due to any act or failure on the part of Plaintiff.

134.    Defendant Clampco Products was negligent in one or more of the following respects:

      a.  Failing to take appropriate steps to ensure the Lid Clamp could secure the lid on the Fermenter;

      b.  Failing to conduct an appropriate inspection of the Lid Clamp;

      c.  Failing to thoroughly and adequately test the Lid Clamp to ensure that it would not fail to secure the lid on the Fermenter;

d.  Designing and/or manufacturing the Lid Clamp with the capacity to allow the lid to blow off the top of the Fermenter while its contents were under pressure;

e.  Failing to equip the Lid Clamp with properly functioning safety features which would prevent the lid from opening while the Fermenter's contents were under pressure;

f.  Failing to prevent damage to, or unexpected loosening, or malfunction of, the Lid Clamp;

g.  Failure to provide users of the Lid Clamp, such as Plaintiff, with adequate instructions for its safe use;

h.  Failing to provide a safe, appropriate, and effective mechanism for securing the lid of the Fermenter;

i.  Failing to design the Lid Clamp with a safety feature that would keep the lid from blowing off the Fermenter should the Lid Clamp fail to secure the lid to the Fermenter;

j.  Failing to warn users of the Lid Clamp, such as Plaintiff, that the Lid Clamp may not secure the lid on the Fermenter while its contents were under pressure;

k.  Failing to warn users of the Lid Clamp, such as Plaintiff, that serious injury could occur if the user attempts to loosen the Lid Clamp when there is 2psi or less of internal pressure within the Fermenter;

l.  Failing to discover defects in, and the dangerous condition of, the Lid Clamp;

m.  Failing to remedy the defects in, and the dangerous condition of, the Lid Clamp;

n.  Failing to properly test, evaluate, inspect, and assemble the Lid Clamp;

o.  Failing to properly design and/or manufacture the Lid Clamp to ensure that it was not unreasonably dangerous;

p.  Failing to warn the public in general, and Plaintiff in particular, of the dangers presented by the use of the Lid Clamp;

q.  Failing to exercise due care and act with regard for the safety of those using its products; and

r.  Such other and further acts and/or omissions as may be shown by the evidence at the trial of this cause.

135.   Each of the above-listed acts and/or omissions, taken singularly or in combination, was a proximate cause of Plaintiff's injuries and damages. The above and foregoing acts and omissions of Defendant Clampco Products constitute negligence, which was the proximate cause of Plaintiff's resulting injuries and damages. Nothing Plaintiff did or failed to do caused or contributed to cause the occurrence made the basis of this suit.

136.   As a direct and proximate result of Defendant Clampco Products's conduct, Plaintiff suffered the following injuries and damages:

a.  Medical expenses in the past and future;

b.  Physical pain and mental anguish in the past and future;

c.  Disfigurement in the past and future;

d.  Physical impairment in the past and future; and

e.  Past lost wages.

## COUNT 12
## STRICT LIABILITY – CLAMPCO PRODUCTS

137.    Plaintiff incorporates the facts and allegations in the preceding paragraphs as if fully set forth herein.

138.    Defendant Clampco Products is the manufacturer and/or co-designer of the Lid Clamp. Defendant Clampco Products supplied the Lid Clamp to Spike Brewing, who then sold and delivered the Lid Clamp to Plaintiff.

139.    At all times prior to delivery, the Lid Clamp was in the exclusive control of Defendant Clampco Products and/or Spike Brewing, their agents, servants, employees, and/or apparent agents, and was delivered to Plaintiff without substantial change in its condition.

140.    The Lid Clamp was used by Plaintiff as designed and intended by Defendant Clampco Products and/or Spike Brewing, without any change in its condition from the time it left the control of the Defendant Clampco Products and/or Spike Brewing until it was used by Plaintiff.

141.    The Lid Clamp, which was sold and delivered to Plaintiff by Spike Brewing and used by Plaintiff, was, at the time of sale and delivery, in a defective condition and unreasonably dangerous to the user.

142.    The Lid Clamp was defective and unreasonably dangerous due to the hazard created by the Lid Clamp not securing the lid on the Fermenter while its contents were under pressure. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

143.    The Lid Clamp was defective and unreasonably dangerous because there was a lack of adequate warnings and notices that the Lid Clamp may not secure the lid on the Fermenter while its contents were under pressure. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

144.    The Lid Clamp was defective and unreasonably dangerous because there was a lack of adequate warnings and notices that serious injury could occur if a user of the Fermenter, such as Plaintiff, attempts to loosen the Lid Clamp when there is 2psi or less of internal pressure within the Fermenter. Such defect(s) constituted a producing cause of Plaintiff's injuries and damages.

145.    As a direct result of the defective condition of the Lid Clamp, Plaintiff sustained the injuries and losses described herein. Had the Lid Clamp not been manufactured, designed, distributed, or supplied by Defendant Clampco Products in such an unreasonably dangerous condition, Plaintiff's injuries would not have occurred.

146.    As a direct and proximate result of Defendant Clampco Products's conduct, Plaintiff suffered the following injuries and damages:

      a.   Medical expenses in the past and future;

      b.   Physical pain and mental anguish in the past and future;

      c.   Disfigurement in the past and future;

      d.   Physical impairment in the past and future; and

      e.   Past lost wages.

## CONDITIONS PRECEDENT

147.    All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## JURY DEMAND

148.    Plaintiff demands a jury trial and tenders the appropriate fee with this complaint.

## **PRAYER**

149.   For the reasons above, Plaintiff Russel Oehring asks the Court to issue summons for Defendants to appear and answer, and that Plaintiff be awarded a judgment against Defendants for the following:

        a.   Actual damages,

        b.   Court costs,

        c.   Pre-judgment and post-judgment interest at the highest rates allowed by law, and

        d.   All other relief, legal or equitable, to which Plaintiff is entitled.

Dated this February 14, 2020           Respectfully submitted,

**HALEY ♦ OLSON**
A PROFESSIONAL CORPORATION
100 N. Ritchie Road, Suite 200
Waco, Texas 76712
Telephone: (254) 776-3336
Facsimile: (254) 776-6823

BY:    /s/ Craig D. Cherry_____
       **CRAIG D. CHERRY**
       Bar No. 24012419
       Email: ccherry@haleyoson.com
       **JUSTIN ALLEN**
       Bar No. 24081977
       Email: jallen@haleyolson.com

       And

       **JOHN B. LEJEUNE**
       Bar No. 24034538
       THE ZIMMERMAN LAW FIRM
       A Professional Corporation
       3501 W. Waco Drive
       Waco, Texas 76710
       (254) 265-9300
       (254) 752-9680 (fax)
       Email:  jlejeune@zlawhelp.com

       **ATTORNEYS FOR PLAINTIFF**