**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **RUSSELL OEHRING** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION 6:19-cv-00444-ADA** |
| | § | |
| **SPIKE BREWING, LLC,** | § | |
| **WINTERS INSTRUMENTS, INC.,** | § | |
| **CLAMPCO PRODUCTS, INC.** | § | |
| *Defendants.* | § | |
| | § | |

**ORDER DENYING DEFENDANT CLAMPCO'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(B)2 OF FEDERAL CIVIL PROCEDURE**

Came on for consideration this date the Motion of Defendant Clampco to dismiss for lack of personal jurisdiction pursuant to rule 12(b)2 of Federal Civil Procedures, filed on March 13, 2020.  ECF No. 42.  Plaintiff Russell Oehring filed his response on March 27, 2020 (ECF No. 44). After careful consideration of the above briefing, the Court **DENIES** Clampco's motion to dismiss for lack of personal jurisdiction.

## I.      Factual Background and Procedural History

Oehring claims to have suffered severe bodily injuries due to the unreasonably dangerous design and malfunction of a home beer brewing device, which is manufactured by Defendant Spike Brewing, LLC ("Spike Brewing"). Second Amd. Compl. ¶ 1, ECF No. 36. Defendant Clampco manufactures a lid-clamp component for said home beer brewing device. *Id.* ¶¶ 1, 5; Venner Aff. ¶ 21, ECF No. 42-1. Specifically, the lid-clamp component (hereafter, "the Clamp"), is used in conjunction with the CF15 Spike Conical Unitank Fermenter (hereafter, "the Fermenter"), which Spike Brewing manufactures. Second Amd. Compl. ¶¶ 2, 5, ECF No. 36. The Clamp's purpose is to secure the Fermenter's lid, while the contents of the Fermenter are

under pressure. *Id.* ¶ 19. Oehring claims that on or about May 15, 2018, when he attempted to loosen the Clamp after depressurizing the Fermenter, the lid of the Fermenter "blew off" and struck Oehring in the face, lacerating Oehring's forehead and damaging the right orbital bone to the point where Oehring's eye had to be removed and replaced with a prosthetic. *Id.* ¶¶ 24–25.

Oehring filed this claim against Spike Brewing in the District Court for the Western District of Texas, Waco Division, on July 25, 2019, amending the complaint twice to include Clampco and other Defendants. *See generally* Compl., ECF No. 1; Amd. Compl., ECF No. 16.; Second Amd. Compl., ECF No. 36. Clampco is a corporation incorporated under the laws of the state of Ohio, with its principal place of business in Wadsworth, Ohio. Venner Aff. ¶¶ 2, 4, ECF No. 42-1. Over the past five years, Clampco has sold and shipped other products (i.e., not the Clamp) to clients in Texas, which has accounted for less than 3% of Clampco's annual sales. *Id.* ¶¶ 14, 15. Clampco provided limited consulting and advising concerning the Clamp's design, manufactured the Clamp, and shipped the manufactured Clamps to Spike Brewing's office in Wisconsin. *Id.* at ¶¶ 17, 21. Clampco has manufactured approximately 6,050 clamping mechanisms for Spike Brewing, approximately 3,150 of which were the Clamp. Def.'s Answer to Third Interrog., ECF No. 44-1. Clampco was aware that Spike Brewing intended to sell the Fermenter, which included the Clamp as a component part, over the internet. Venner Aff. ¶¶ 17, 26, ECF No. 42-1. Clampco makes a special appearance and moves to have this Court dismiss with prejudice the Second Amended Complaint for lack of personal jurisdiction over Clampco pursuant to Federal Rule of Civil Procedure 12(b)2.

## II.    Legal Standard

In a diversity case, a federal court may exercise personal jurisdiction over a nonresident defendant if "the forum state's long-arm statute extends to [such] defendant and the exercise of

jurisdiction comports with due process." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). Since "the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019); *see also Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010) ("Our long-arm statute reaches as far as the federal constitutional requirements for due process will allow. Consequently, the statute's requirements are satisfied if exercising jurisdiction comports with federal due process limitations." (internal quotation marks and citations omitted)).

### A.  General Personal Jurisdiction

Certain types of contacts support a court's exercise of general jurisdiction over a nonresident defendant, while others support the exercise of specific jurisdiction. *Id*. General jurisdiction "requires continuous and systematic forum contacts and allows for jurisdiction over all claims against the defendant, no matter their connection to the forum." *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (internal quotation marks and citation omitted). Specific jurisdiction, on the other hand, demands a connection between the suit and the forum. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. Clampco asserts that this Court does not have general personal jurisdiction over Clampco, and Oehring concedes that a finding of general personal jurisdiction would be "unlikely" and limits his argument to the applicability specific personal jurisdiction under the stream-of-commerce theory. Def.'s Mot. at 1, ECF No. 42; Pl.'s Resp. at 7, ECF No. 44. The Court's focus is also so-limited.

### B. Specific Jurisdiction

Whether specific jurisdiction can be properly asserted over a nonresident defendant is dependent on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84, (2014) (internal quotation marks and citation omitted). For the exercise of specific jurisdiction to comply with due process, "the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (alterations in original omitted) (internal quotation marks and citation omitted). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (alteration in original omitted) (internal quotation marks and citation omitted). Such activity or occurrence must "create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Absent this connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781. "[A] defendant's general connections with the forum are not enough." *Id.*

Consistent with these principles, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at 1780 (internal quotation marks and citation omitted). Considering the preceding precepts, in determining whether due process allows the exercise of specific jurisdiction, this Court applies the following three-factor test:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the

defendant's forum-related contacts; and (3) whether the exercise of personal

jurisdiction is fair and reasonable.

*Carmona*, 924 F.3d at 193 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271

(5th Cir. 2006)).

Notably, concerning the minimum-contacts inquiry (factor 1), the Supreme Court has

stressed that, because due process limits states' judicial authority to protect the liberty of

nonresident defendants, significant contacts are those that "the defendant himself creates with the

forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

475 (1985)); see also *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1779 ("The primary focus of our

personal jurisdiction inquiry is the defendant's relationship to the forum State.") Thus, while "a

defendant's contacts with the forum State may be intertwined with his transactions or

interactions with the plaintiff or other parties," the "defendant-focused 'minimum contacts'

inquiry" cannot be satisfied by merely demonstrating contacts between the plaintiff or a third

party and the forum state. *Walden*, 571 U.S. at 284, 286. However, if the plaintiff demonstrates

satisfaction of the first two factors with respect to each of his claims, then the burden shifts to the

nonresident defendant to show, under the third factor, "that exercising jurisdiction would be

unfair or unreasonable." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014).

### C.  Stream-of-Commerce Theory

In the context of products-liability cases, an analysis involving a stream-of-commerce

metaphor is often employed to assess whether the nonresident defendant has minimum contacts

with the forum (factor 1). As the Supreme Court has explained, courts use the metaphor to allow

for jurisdiction where "the product has traveled through an extensive chain of distribution before

reaching the ultimate consumer." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.

915, 926 (2011) (internal quotation marks and citation omitted). The stream-of-commerce doctrine "recognizes that a defendant may purposefully avail itself of the protection of a state's laws—and thereby [ ] subject itself to personal jurisdiction—by sending its goods rather than its agents into the forum." *In re: Depuy Orthopaedics, Inc.*, 888 F.3d at 753.

The Fifth Circuit has found this doctrine and thus minimum contacts satisfied so long as the court determines "that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir.1987)). In other words, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Id.* (quoting *Luv N' care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 470 (5th Cir.2006)); *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993). Nevertheless, "[t]he defendant's contacts [with the forum state] must be more than 'random, fortuitous, or attenuated, or [the result] of the unilateral activity of another party or third person.' " *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). Yet, this Court must resolve all undisputed facts submitted by the plaintiff, as well as all, facts contested in the affidavits, in favor of jurisdiction. *Luv N' care, Ltd.*, 438 F.3d at 469 (citing *Wyatt v. Kaplan,* 686 F.2d 276, 280 (5th Cir.1982)).

### III.   Analysis

### A.  Establishing Clampco's Minimum Contacts with Texas

Under the stream of commerce theory, the minimum contacts requirement is satisfied so long as "the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Ainsworth*, 716 F.3d at

177 (5th Cir. 2013). In *Ainsworth*, the Fifth Circuit determined that Moffett's 203 forklift sales in Mississippi over ten years, which constituted 1.55% of its United States sales, soundly established sufficient minimum contacts to vest specific personal jurisdiction in Mississippi. *Id.* at 179. The Fifth Circuit determined that actual knowledge of those sales occurring in Mississippi was irrelevant as Mississippi was the fourth-largest poultry-producing state in the country, and Moffett's forklifts were designed for poultry-related uses. *Id.* Thus, the Fifth Circuit determined, Moffett could have reasonably expected that sales of its forklifts would be made in Mississippi and that it could also be haled into court in Mississippi. *Id.*

Similarly, the Court finds that Clampco could have reasonably expected for sales of the Fermenter, which included the Clamp, to be made in Texas and that Clampco could be haled into court in Texas. Over the past five years, Clampco has sold products in Texas, which has accounted for less than 3% of the total annual sales for Clampco. While approximately 3% is a relatively small portion of Clampco's total sales, it is more than the 1.55% of sales that the Fifth Circuit found sufficient in *Ainsworth*. Additionally, Clampco has sold over 3,000 Clamps, 256[1] of which are recorded as being shipped to Texas. Ex. B, ECF No. 44-2. These Clamps are designed to be used in a home beer brewing devices, and Texas is the second-largest consumer of beer in the nation.[2] These figures both exceed the number of forklifts sold in Mississippi and Mississippi's proportion of poultry production that the Fifth Circuit found sufficient to establish minimum contacts in *Ainsworth*. Finally, Clampco was aware that the Clamp would be sold and delivered nationwide as part of Spike Brewing's business and could have reasonably anticipated

---

[1] Plaintiff alleges at least 181 clamps have been sold and delivered to customers in Texas, the Court counts 256 clamps delivered to Texas based on the data provided in Exhibit B, ECF No. 44-2. Pl.'s Resp. at 17, ECF No. 44.
[2] MAP: The States That Drink the Most Beer in America, VINEPAIR (June 2, 2020, 10:15 AM), https://vinepair.com/articles/map-states-drink-beer-america-2018/ (citing data from Michael B. Sauter & Samuel Stebbins, *States Drinking the Most Beer*, 24/7 Wall St. (June 2, 2020, 10:18 AM), https://247wallst.com/special-report/2018/04/30/states-drinking-the-most-beer-2/6/)

being haled into Texas courts. Def.'s Answer to Third Interrog., ECF No. 44-1; *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 200 (5th Cir. 1980) (finding that manufacturer should have reasonably anticipated being haled into court in Texas since its distributor sold to the nationwide market). Though Clampco claims they had no information regarding Spike Brewing's plan for distribution, the Court must resolve contested facts in favor of jurisdiction. Venner Aff. ¶ 23, ECF No. 42-1; *Luv N' care, Ltd.*, 438 F.3d at 469. Therefore, the Court finds that Clampco did deliver the product into the stream of commerce and could have foreseen, and thus had the expectation, that the Clamp would be purchased by or used by consumers in Texas.[3]

### B. Claims stem from Clampco's contacts

To establish specific personal jurisdiction, the Court must find that Oehrings's claims stem from Clampco's contacts with Texas. *Carmona*, 924 F.3d at 193. Clampco's contacts have been determined to be customers who have purchased the Fermenter, with the Clamp as a component part, from Spike Brewing.  Oehring purchased a beer-brewing kit, complete with the Fermenter and the Clamp as a component-part, from Spike Brewing. Amd. Compl. ¶¶ 1, 5. Oehring was injured when he began to loosen the Clamp and the lid of the Fermenter "blew off" and struck Oehring in the face, lacerating Oehring's forehead and damaging the right orbital bone to the point where Oehring's eye had to be removed and replaced with a prosthetic. *Id.* ¶¶ 24–25. The Clamp's purpose is to secure the lid to the Fermenter. *Id.* ¶ 19. Thus, Oehring brings claims of Negligence and Strict Liability against Clampco for injuries, which were the direct result of the defective and unreasonably dangerous conditions of the Clamp. *Id.* ¶¶ 87, 91, 95.

---

[3] Clampco alleges there must be "something more" such as "special state-related design, advertising, advice, marketing or anything else" to show that Clampco availed itself to the privilege of conducting activities in Texas. However, the Fifth Circuit has recently affirmed that there is no requirement for anything besides the foreseeability or expectation that the product would be used in the forum state. Def.'s Mot. at 18, ECF No. 42; *Zoch v. Magna Seating (Germany) GmbH*, No. 17-CV-578, 2020 WL 1951482, at *6 (5th Cir. Apr. 22, 2020).

Because Oehring's injuries are the direct result from the alleged defective and unreasonably dangerous product manufactured by Clampco, the Court finds that Oehring's claims do stem from Clampco's contacts with Texas.

### C. Traditional notions of fair play and substantial justice

Even if the Court determines that minimum contacts exist and the claims stem from those contacts, the exercise of specific personal jurisdiction must not offend the traditional notions of fair play and substantial justice. *Ruston Gas Turbines, Inc.*, 9 F.3d at 421.  In determining this fundamental fairness issue, the Court must examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. *Id.* Since Oehring has satisfactorily demonstrated that this Court may exercise specific personal jurisdiction, the burden now shifts to Clampco to show "that exercising jurisdiction would be unfair or unreasonable." *Monkton Ins. Servs., Ltd.,* 768 F.3d at 433.

Clampco asserts that a finding of specific personal jurisdiction would impose several burdens upon Clampco, namely, the requirement of Clampco personnel to travel to Texas, the requirement of exchanging documents and other evidence with parties and attorneys in Texas, and the requirement of attending the trial in Texas. Def.'s Mot. at 19, ECF No. 42. The Court, having already addressed the existence of contacts between Clampco and Texas, believes that the burden to defend the lawsuit in Texas is not so extraordinary as to decline to exercise specific personal jurisdiction over Clampco. *See Philip Morris USA, Inc. v. Lee*, No. 05-CV-490, 2006 WL 4659839, at *5 (W.D. Tex. Dec. 28, 2006). Further, the inconvenience of litigating in a foreign state is by no means extraordinary in the federal courts; and Clampco fails to identify any

facts which distinguish this case from the norm. *Id.* Finally, as Oehring points out, the burden of exchanging documents can be accomplished electronically and adds no additional burden that would not exist if this suit was litigated in Ohio. Pl.'s Resp. at 18, ECF No. 44. Therefore, the Court finds that there is nothing unconstitutional about exercising specific personal jurisdiction over Clampco based on the burden litigation in Texas will impose upon Clampco. Moreover, Clampco fails to argue the other four factors of fundamental fairness in its briefing. *See generally* Def.'s Mot., ECF No. 42. The Court determines that Clampco has failed to meet its burden of showing that exercising jurisdiction would be unfair or unreasonable; therefore, the Court finds it may exercise specific personal jurisdiction over Clampco.

### IV.    Conclusion

Having found that Clampco has sufficient minimum contacts with Texas, that Oehrings claims stem from those contacts, and that exercising specific personal jurisdiction does not offend the notions of fair play and substantial justice, the Court may exercise specific personal jurisdiction over Clampco. It is therefore **ORDERED** that Clampco's Motion to Dismiss is **DENIED**.

**SIGNED** this 4th day of June, 2020.


ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE